***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rideout and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Rideout and enters the following Opinion and Award:
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. At the time of the injury, the Defendant employed three or more employees, and an employee-employer relationship existed between Plaintiff and Defendant.
2. Plaintiff sustained a compensable injury by accident to her right shoulder on October 11, 2007.
3. Plaintiff's average weekly wage is $642.74 which yields a compensation rate of $428.51.
4. Plaintiff's Medical Records were admitted into evidence.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On October 11, 2007, Plaintiff slipped and fell on the factory floor, landing on her right side, and injuring her right shoulder, right hand, and right hip.
2. On October 15, 2007, Bruce Berry, M.D., with Hart Industrial Clinic, treated Plaintiff, documenting that she fell at work on October 11, 2007, and "is particularly sore in the right shoulder and somewhat in the right forearm, where she has puncture wounds." Dr. Berry also documented right hip pain. On October 18, 2007, Dr. Berry noted patient to have pain in her right hip, right shoulder, right elbow, and right hand. His exam revealed some tenderness at the base of the thumb of Plaintiff's right hand with slightly decreased grip strength.
3. On November 5, 2007, Allen Edwards, M.D., also with Hart Industrial Clinic, documented that Plaintiff had pain in her right thumb. Dr. Edwards again noted right thumb pain on December 4, 2007. *Page 3 
4. On December 18, 2007, Dr. Berry's exam of Plaintiff's right hand revealed some tenderness at the base of the first metacarpal and mildly decreased grip strength. Plaintiff was referred to Dr. Hurley for further evaluation of her shoulder.
5. On January 3, 2008, Plaintiff presented to Dr. Hurley for the first time. His exam of Plaintiff revealed positive impingement signs and diminished rotator cuff strength. He injected her right shoulder and sent her for physical therapy. He also set restrictions of no lifting over five (5) pounds and no overhead lifting with her right arm. On January 3, 2008, Dr. Hurley also noted Plaintiff's numbness in her right thumb.
6. Plaintiff subsequently developed increasing and significant right shoulder pain for which she received medical treatment, including surgery. Plaintiff worked for the Defendant-Employer until the pain in her right shoulder prevented her from continuing.
7. On April 23, 2008, Plaintiff underwent an arthroscopic subacromial decompression, a planing of her distal clavicle, and a mini-rotator cuff repair of her right shoulder, performed by surgeon Peter T. Hurley, M.D.
8. On May 7, 2008, Defendants filed a Form 63 initiating temporary total disability payment without prejudice beginning May 6, 2008. On June 26, 2008, Defendants filed a Form 60 accepting liability for Plaintiff's injuries and agreeing to increase Plaintiff's temporary total disability benefit amount after completing and reviewing a Form 22 requested by Plaintiff's counsel.
9. After Plaintiff's April 23, 2008, surgery, she was unable to use her right arm. The undersigned note Plaintiff is right handed. *Page 4 
10. On January 7, 2009, Plaintiff underwent diagnostic arthroscopy for her ongoing right shoulder pain. After this surgery, Plaintiff resumed her physical therapy as prescribed and experienced some improvement in her right shoulder pain.
11. On February 20, 2009, Dr. Hurley noted that Plaintiff was doing better and feeling better following the second surgery, but was complaining of some pain in her wrist and hand. Dr. Hurley stated that "[w]e really did not discuss this [her wrist and hand pain] in her initial visits. When she was sent to us, we looked at her shoulder." Dr. Hurley's examination of Plaintiff's right hand was notable for stiffness, the inability to make a complete fist, and some swelling. Dr. Hurley then instructed the therapist, with whom Plaintiff had been treating for her shoulder, to work on some range of motion and strengthening of Plaintiff's right hand and wrist.
12. On February 24, 2009, Plaintiff's physical therapist documented that Plaintiff's hand continued to be painful and that Plaintiff was having difficulty with her right hand grip strength.
13. On May 7, 2009, Dr. Hurley stated that ". . . she is finally ready to go back to work with no restrictions. It took a long time for this [her shoulder] to heal. With regards to her wrist, I need to have the therapist to work with her for a few weeks to try to get some motion back and get some soreness out. I do believe the wrist and hand problem is related to this injury. She has had some swelling in the hand ever since the injury/surgery. We will give her a form saying she is full duty without restrictions. We will send her back to the therapist to work on her hand some and we will see her back in a month. I do not want to discharge her yet just in case she continues to have trouble with that hand." Dr. Hurley also documented that Plaintiff's right hand was still stiff and that she had had some swelling in this hand ever since surgery. Dr. Hurley then referred *Page 5 
Plaintiff for physical therapy for her right wrist and hand problems and he declined to discharge her yet from his care.
14. Based on the evidence of record and context of the statement, the undersigned find that Dr. Hurley's May 7, 2009, comment regarding his release is referring to Plaintiff's shoulder and not her right hand and wrist.
15. Defendants declined to authorize Dr. Hurley's prescribed care for Plaintiff's right hand and wrist and then, on May 14, 2009, Defendant filed a Form 24.
16. On June 4, 2009, Shelia Ward, Defendant's Nurse Case Manager, documented in her report that "[t]he hand therapy was denied by the carrier."
17. On June 16, 2009, Dr. Hurley noted that Plaintiff continued to have some swelling and pain in her wrist. He reiterated that Plaintiff was referred to him for treatment of her shoulder and that he had not originally assessed her for her wrist problems. Dr. Hurley referred Plaintiff to a hand surgeon in his practice to evaluate her wrist. Shelia Ward, Defendant's Nurse Case Manager, sought approval from the Defendant for a referral to a hand specialist as recommended by Dr. Hurley. Dr. Hurley stated "I am planning to release Plaintiff in regard to her right shoulder today." Dr. Hurley did not release Plaintiff for her right hand and wrist, but instead referred her to a hand surgeon for further evaluation.
18. Defendants never approved nor authorized the referral of Plaintiff to a hand specialist as prescribed by the Authorized Treating Physician, Dr. Hurley.
19. On June 17, 2009, a Special Deputy Commissioner approved Defendants' Form 24 and on June 29, 2009, Plaintiff filed a Form 33 appealing the June 17, 2009 Order approving Defendants' Form 24 application. Also on June 29, 2009, Plaintiff filed a Form 33 for Defendants' failure to authorize the medical treatment prescribed by Dr. Hurley. *Page 6 
20. On July 8, 2009, a telephone conference was scheduled before Deputy Commissioner Chrystal Redding Stanback on Plaintiff's medical issues. Per consent of the parties, Plaintiff forwarded a letter to Dr. Hurley asking that he clarify his position on the relatedness of Plaintiff's right hand/wrist problems to her work injury. On August 3, 2009, Dr. Hurley responded to Plaintiff's letter by confirming that Plaintiff's hand/wrist problems are related to her work injury and/or resulting surgery/therapy.
21. On August 13, 2009, after discovering that a second Form 33 was pending for docketing before the Commission, Deputy Commissioner Stanback ordered that the medical issues be referred for a full evidentiary hearing.
22. Plaintiff has applied and/or attempted to apply for jobs with Hickory Springs, Hickory White, Lane Venture, Chick-Fil-A, McDonalds, Hickory Chair, and Village Inn Pizza in her area. No employer has offered a job of any type to Plaintiff.
23. According to the North Carolina Employment Security Commission, and the United States Department of Labor, Bureau of Labor Statistics, in July 2009, the unemployment rate in the Hickory/Lenoir/Morganton Metro area was 15.1%, the highest in North Carolina.
24. Plaintiff is 55 years old, has an eighth grade education and unskilled work experience.
25. Plaintiff continues to experience pain in her right shoulder, as well as in her untreated right hand and wrist, and in her right hip.
26. Plaintiff continues to experience pain and limitation in her right hand for which she requires further evaluation and medical treatment.
27. Plaintiff has met her burden in proving that she presently remains temporarily and totally disabled from any gainful employment. *Page 7 
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. As a result of her admittedly compensable injury by accident, the Plaintiff is disabled within the meaning of N.C. Gen. Stat. § 97-2(9).
2. Plaintiff is entitled to payment of continuing temporary total disability benefits from May 18, 2009, and continuing until such time that Plaintiff has obtained suitable employment within her restrictions or until further Order of the Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to ongoing medical treatment for her related injuries, for so long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, give relief or tend to lessen Plaintiff's period of disability, subject to the limitations of statute in N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. §§ 97-2(19), 97-25, 97-25.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Subject to an attorney's fee hereinafter approved, Defendants shall pay ongoing temporary total disability compensation to Plaintiff at the rate of $428.51 per week, commencing May 18, 2009, and continuing until such time that she obtains suitable employment within her restrictions or until further Order of the Commission. Compensation that has accrued shall be paid in a lump sum, also subject to the attorney's fee. *Page 8 
2. Defendants shall authorize ongoing medical treatment as prescribed by Plaintiff's authorized treating physician(s).
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation due Plaintiff under Paragraph One of this Award commencing as of May 18, 2009, is approved for Plaintiff's counsel and shall be paid by Defendant as follows: twenty-five percent (25%) of any compensation which has accrued shall be paid directly to Plaintiff's counsel. Thereafter, every fourth (4th) compensation check shall be paid directly to Plaintiff's counsel.
4. Defendants shall pay the costs.
This the 30th day of June, 2010.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER